**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| **TERRY M.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. CBD-19-3062** |
| ) | |
| **KILOLO KIJAKAZI[1],** ) | |
| ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Terry M. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 14, Plaintiff's Alternative Motion for Remand, ECF No. 14, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 18. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On May 8, 2013, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning July 1, 2011. R. 136. Plaintiff's claims were initially denied on April 14, 2014, and upon reconsideration on September 12, 2014. R. 136. An administrative hearing was held on January 20, 2016. R. 26, 136. On February 10, 2016, Plaintiff's claims for DIB and SSI were denied. R. 149. Plaintiff did not seek review by the Appeals Council.

On April 4, 2016, Plaintiff filed a new set of claims for DIB and SSI, alleging disability beginning February 6, 2016. R. 26. Plaintiff alleged disability due to depression, anxiety, suicide attempt, asthma, neuropathy, chronic back pain, leg pain, desmoid rectal cancer in the past, and tendonitis in the arms and elbows. R. 155–56, 173–74, 194, 212. Plaintiff's claims were initially denied on October 27, 2016, and upon reconsideration on May 3, 2017. R. 26. An administrative hearing was held on August 30, 2018. R. 26. On October 16, 2018, Plaintiff's claims for DIB and SSI were denied. R. 51. Plaintiff sought review by the Appeals Council, which concluded on August 27, 2019, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.*

*Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

3

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 30–51. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 6,

2016, the alleged onset date.  R. 31.  At step two, under 20 C.F.R. § 404.1520(c) and §416.920(c), the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, systemic scleroderma, dysphagia, neuropathy, asthma, chronic obstructive pulmonary disease ("COPD"), affective disorder, and anxiety disorder.  *Id.*  The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff's] ability to perform basic work activities."  *Id.*  At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  R. 33.  Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a).  The ALJ discerned that Plaintiff had the following limitations:

> [Plaintiff can] engage in occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, and occasional balancing on uneven surfaces, stooping, kneeling, crouching, and crawling.  [Plaintiff] needs a handheld assistive device for ambulation and balance.  [Plaintiff] can engage in frequent handling and fingering.  [Plaintiff] must have a temperature-controlled environment.  Time off task can be accommodated by normal breaks.  [Plaintiff] can have no production pace work and can have few changes in the routine work setting.

R. 36.  At step four, the ALJ determined Plaintiff is capable of performing past relevant work as a dispatcher.  R. 50.  The ALJ found that Plaintiff has not been under a disability, as defined in the SSA.  R. 51.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or in the alternative, remand the case to the Commissioner for further proceedings, alleging that Defendant's final decision is not supported by substantial evidence.  Pl.'s Mem. in Supp. of Pl.'s Mot. 4, ECF No. 14–2.  Specifically, Plaintiff avers that 1) the ALJ set forth an inadequate

6

hypothetical, affecting the ALJ's RFC determination; 2) The ALJ failed to properly evaluate whether Plaintiff's impairments met or equaled listing 1.04A; and 3) At the second step in the sequential process the ALJ failed to identify or consider whether Plaintiff's fibromyalgia constituted a medically determinable, severe impairment. *Id.* at 9, 14, 23. For the reasons set forth below, the Court **REVERSES** the ALJ's decision and **REMANDS** the matter for further proceedings.

Plaintiff asserts that "the ALJ fail[ed] to define a limitation she posed to the vocational expert and subsequently included in her RFC." Pl.'s Mem. in Supp. of Pl.'s Mot. 10. Plaintiff alleges that the hypothetical posed to the VE, contained a limitation, precluding "production pace," which is not defined by Social Security Regulations nor the Dictionary of Occupational Titles. *Id.* Thus, without defining "production pace," the VE could not have been aware of the specific limitation contemplated by the ALJ. *Id.* Defendant counters that the ALJ developed evidence and engaged with the VE to fully establish that Plaintiff's past relevant work as a dispatcher, was not at a production pace setting. Def.'s Mem. in Supp. of Def.'s Mot. 7. Defendant also states that ALJ elicited testimony from the VE who established that Plaintiff's relevant work as a dispatcher, did not involve the type of high volume, high pace work, one would perform as a 911 operator. *Id.* at 8. Defendant contends that Plaintiff's reliance on *Thomas*, *Perry*, and other case law is misplaced, and does not establish a lack of substantial evidence. *Id.* This Court disagrees.

The Commissioner employs a VE to offer evidence on whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2011). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20

7

C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments."  *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence."  *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).  The ALJ is afforded substantial leeway in the formulation of hypothetical questions.  *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)).

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.  *Thomas*, 916 F.3d at 312.  The second component, the ALJ's logical explanation, is just as important as the other two.  *Id.*  Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.  *Id.* (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Plaintiff points to the Court's opinion in *Thomas*, where the Court found that the use of the terms "production rate or demand pace," was a basis for remand, as the ALJ did not define the terms "production rate pace or demand pace."  *Id.*  The Court in *Thomas* explained that:

> [T]he ALJ stated Thomas could not perform work, requiring a production rate or demand pace, [and thusly the ALJ] did not give us enough information to understand what those terms mean.  *Id.*  [Further], [t]hat makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence.

*Id.  See Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of the term "non-production oriented work setting," which is not defined by the regulations or case law or otherwise self-explanatory, prevented meaningful review because the reviewing court

8

could not determine what the ALJ meant by the term or whether there was a "logical bridge" between the evidence in the record and the ALJ's inclusion of the limitation).

There are other cases in which this Court found that the ALJ's use of an undefined term prevented meaningful review. *See Michelle J. v. Kijakazi*, No. CV TJS-20-2116, 2021 WL 4894930, at *2 (D. Md. Oct. 20, 2021) (where the Court found that the ALJ "'ma[de] it difficult, if not impossible,' for the Court to determine whether the ALJ's decision was supported by substantial evidence," by failing to define the term "production rate for pace of work."); *Jennifer C. v. Saul*, No. CV GLS 20-1354, 2021 WL 1990069, at *4 (D. Md. May 18, 2021) (remanding the case to the ALJ finding that the ALJ never defined the phrase "no production pace work," either in her opinion or at the hearing and the use of the phrase was ambiguous at best.); *Victoria R. v. Comm'r, Soc. Sec. Admin.*, No. CV DLB-19-1752, 2020 WL 1929719, at *2 (D. Md. Apr. 21, 2020) (where the Court found that "the term 'production rate pace' is similar to the terms 'production rate' and 'demand pace' that the Fourth Circuit found frustrated appellate review in *Thomas*."); *Jeffrey H. v. Saul*, No. CV TJS-20-0050, 2020 WL 6685282, at *2 (D. Md. Nov. 12, 2020) (where the Court found that, "[t]he ALJ [did] not define the term 'production rate pace' and the Court is uncertain what the ALJ meant by this term."); *Mona S. v. Saul*, No. 8:19-CV-00990-GLS, 2020 WL 3440130, at *3 (D. Md. June 23, 2020) (where the Court found that the ALJ's failure to define the phrase "no production rate for pace of work" meant that "Plaintiff's RFC assessment [could not] be meaningfully reviewed."); *Keith B. v. Saul*, No. 1:19-CV-00803-GLS, 2020 WL 3439261, at *3 (D. Md. June 23, 2020) (where the Court agreed with Plaintiff's argument that "'production pace' work is not defined by Social Security Regulations nor the Dictionary of Occupational Titles, and is not a phrase that has a common meaning. Thus, the

absence of a definition led the VE to consider a flawed hypothetical and to reach an erroneous conclusion."). [2]

Here, the ALJ posed this hypothetical to the VE.

> [Plaintiff can] engage in occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, and occasional balancing on uneven surfaces, stooping, kneeling, crouching, and crawling. [Plaintiff] needs a handheld assistive device for ambulation and balance. [Plaintiff] can engage in frequent handling and fingering. [Plaintiff] must have a temperature-controlled environment. Time off task can be accommodated by normal breaks. [Plaintiff] can have no production pace work and can have few changes in the routine work setting.

R 36.

Defendant argues that Plaintiff failed to recognize that the "the ALJ developed evidence and engaged in discussion with the VE to fully establish that [Plaintiff's] job as a dispatcher was not in a production pace setting.". Def.'s Mem. in Supp. of Def.'s Mot. 7. To support his argument, Defendant points out that "the VE distinguished between dispatcher jobs in a very busy location, with a high volume of calls coming in and a lot of security officers needing to be dispatched to different locations (a setting the ALJ compared to high pressure, high pace work of 911 dispatchers) versus the setting in a mall where the dispatcher monitors video screens and dispatches security officers to locations, as needed, but at times is simply watching the video screens and not making too many calls." *Id*. at 6. The Court finds Defendant's argument unpersuasive.

The Court finds troubling that while the VE appeared to be knowledgeable about security dispatchers, the VE was also speculating Plaintiff's duties. R. 111. When the ALJ asked the VE to explain the talking aspect of being a dispatcher, the VE stated:

---

[2] There are several cases in which this Court remanded the case to the ALJ, for failing to define an undefined term. This Court has referenced some recent cases as examples.

> . . . [I]t certainly could be that an individual is talking pretty much full-time, if it's a very busy location and a lot of calls are coming in and a lot of people have to be dispatched or dispersed to different locations. I wouldn't have imagined that to be the case in a mall environment in which security employees have to be dispatched to different places throughout the mall based on what is being seen on the screens, please go over and check this out, check that out; we've gotten a call from this store or that store, please go over and take care of such-and-such an individual or check for product loss. . . I have to imagine that there are times when the person is watching the monitor and not making too many calls to anybody. They're just security guards, personnel are on their post and walking their post, and everything is going moderately smoothly.

R. 111-112. The VE did not persuade the Court in her testimony about her knowledge of Plaintiff's duties, while using terms such as "could be" or "imagine". Further, when the ALJ questioned the VE about her familiarity with mall setting security dispatchers, the VE stated that she has not seen them in operation; she has not observed them; and her response is more of a supposition from being aware of other security positions and from being in malls. R. 112. The VE then stated that "[she] does not know [if] that [information] qualifies [her] as a mall expert," and the ALJ responded that "[m]aybe [she]'ll have to ask a teenager.". The ALJ then asked the VE if she had familiarity with similar situations such as a 911 operator, in which the VE affirmed and responded accordingly. R. 112–13. After that discussion, the ALJ asked the VE several hypotheticals, including the one listed above using the term "production pace." R. 113–117.

The *Thomas* court ruled that by using the terms "'production rate or demand pace,' the ALJ did not give [the Court] enough information to understand what those terms mean[t]." *Thomas*, 916 F.3d at 312. The Court explained that it made it difficult, "if not impossible, for [the Court] to assess whether their inclusion in Thomas's RFC is supported by substantial evidence." Similarly, the Court finds that the ALJ committed the same reversible error as found in *Thomas* and the other cases mentioned above, by using the term "production pace." The use of the term "production pace" is ambiguous, and it is unclear what the ALJ meant by that term.

The ALJ failed to provide a definition, explanation, or anything else serving as a "logical bridge" to explain the meaning of her use of the term "production pace." The ALJ never explained the term "production pace" throughout the hearing, in the ALJ's RFC analysis, the discussion with the VE, nor in her decision.

As stated above, the VE was not particularly knowledgeable about Plaintiff's exact duties as actually or generally performed. Thus, the ALJ had a duty to ensure that her RFC and hypothetical to the VE were clear so that there was no ambiguity. As the Court held in *Henry G. v. Kijakazi*, No. CV TJS-20-2142, 2021 WL 4963249, at *2 (D. Md. Oct. 26, 2021), "[i]t is unclear whether the VE and the ALJ had a shared understanding of the meaning of the term 'production pace.'" There is also no narrative discussion of the evidence that informs the Court of which mental or physical impairments led to the limitation. *See Jennifer C.*, 2021 WL 1990069, at *4. The Court is left to speculate whether the ALJ's RFC was supported by substantial evidence. Accordingly, remand is required. On remand, the ALJ shall provide a proper definition of the term "production pace."

The Court also finds troubling that the ALJ acknowledged that the VE did not have particular knowledge as to mall security dispatchers, and credited her opinion based on her general training, experience, and professional opinion; but gave no weight to the RFC findings in the decision issued on February 16, 2016. R. 147. Although the SSA previously ultimately denied Plaintiff's SSI and DIB claims, the previous decision found that Plaintiff was unable to perform her past relevant job. *See supra* Section I; R. 147. Even though the ALJ is afforded great deference to make new findings independent of any previous findings[3], this Court finds it odd that the ALJ reasoned that her outcome differed from the previous decision, because the only

---

[3] *See* AR 00-1(4); *Albright v. Comm'r, Soc. Sec. Admin.*, 174 F.3d 473, 476 (4th Cir. 1999)

information regarding Plaintiff's job duties in the previous decision was from the VE. R. 50-51. However, it appears the ALJ adopted the testimony of the VE in the instant case, when she acknowledged that she was not specifically familiar with Plaintiff's job duties. The ALJ should also resolve this discrepancy on remand.

As mentioned above, Plaintiff also raises other issues for review. However, in view of the Court's decision to remand the matter due to the improper use of the undefined term "production rate pace," the Court declines to address the remaining issues. *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).

On remand, the ALJ should address the issues raised by Plaintiff. *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019). In remanding this case, the Court expresses no opinion on whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect. *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

### IV.    Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

December 13, 2021                                                          /s/
                                                                    Charles B. Day
                                                                    United States Magistrate Judge

CBD/pjkm